# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

In re: Estate of Larry Joe Hasian

Pamela C. Hasian, Appellant,

v.

Kellie Queen; Kamilla Warren; Brandy Gibson, Respondents.

Appellate Case No. 2024-000912

———

Appeal From York County
Heath P. Taylor, Circuit Court Judge

———

Opinion No. 6157
Heard December 9, 2025 – Filed August 12, 2026

———

## AFFIRMED AS MODIFIED

———

Malissa Pierce Church, of Malissa Church Law, LLC, of Rock Hill, for Appellant.

John P. Gettys, Jr. and Daniel Joseph Ballou, both of Morton & Gettys, LLC, of Rock Hill, for Respondents.

———

**MCDONALD, J.:** In this action for formal testacy and appointment of a personal representative for the Estate of Larry J. Hasian, surviving spouse Pamela Hasian appeals the award of attorney's fees to Respondents Kellie Queen, Kamilla Warren, and Brandy Gibson, Decedent's daughters from a prior marriage. Hasian also

challenges the finding that she converted Estate assets by writing checks to herself from Decedent's business account.  We affirm as modified.

**Facts and Procedural History**

Larry Hasian died on September 13, 2021.  Pamela Hasian filed a petition for formal testacy and appointment as his personal representative on October 8, 2021.  With her petition, Hasian filed a handwritten will (the 2021 Will) purportedly signed by Decedent on May 9, 2021; Hasian claimed the Will's execution was witnessed by Decedent's CPA, Cynthia Spera, and Henry "Hank" Bell.[1]  Respondents timely responded, cross-petitioned for formal testacy and appointment, and brought claims for intentional interference with inheritance, conversion, civil conspiracy, statutory attorney's fees, and violation of the South Carolina Frivolous Civil Proceedings Sanctions Act.[2]  They also sought to probate a copy of a will Decedent executed in 1997.[3]

Hasian testified that she and Decedent decided to prepare the 2021 Will after discussing Covid-related deaths.  She claimed she found some examples online, prepared the document pursuant to Decedent's instructions, and gave it to him to sign.  Although Hasian initially admitted she was the only person present when Decedent signed the 2021 Will, she later claimed not to recall whether she actually saw him sign it.  She further admitted neither witness was present when Decedent signed the document—she stated Spera signed before Decedent's death, while Bell signed after he died.  Both witnesses backdated their signatures to May 9, 2021, at Hasian's request.

Spera testified that she signed as having witnessed the 2021 Will while doing bookkeeping for Decedent's business, Larry J's Automotive, but she had no explanation for why she was working at the shop on Mother's Day Sunday.  Spera knew Hasian wrote the 2021 Will, and admitted that she did not actually see Decedent signing the Will.  Still, she claimed Decedent "was there floating

---

[1] The 2021 Will devised the entirety of the Estate to Hasian.
[2] Before filing their own claims, Respondents wrote to Hasian, notifying her of their handwriting expert's opinion that Decedent did not sign the 2021 Will.  Respondents asked Hasian to withdraw her petition and notified her that they would respond to her filing with their own claims, including a request for attorney's fees, if she failed to withdraw her petition within one week of their letter.
[3] The 1997 Will bequeathed the entirety of the Estate to Decedent's second wife, whom he divorced in 2006, and named Respondents as alternate devisees.

around," Hasian presented the document to her, and Decedent told her, "[Yeah], that's me, Pam takes care of everything."

Bell testified that he did not witness Decedent's execution of the purported will, nor did he witness anyone sign the document in Decedent's presence at Decedent's direction. Bell further admitted that he did not sign as a witness until four months after Decedent died and that he backdated his signature at Hasian's request.

Following a hearing, the probate court granted Respondents' motion for partial summary judgment as to the invalidity of the 2021 Will but held its ruling on attorney's fees in abeyance pending a full hearing on the merits. The probate court also heard Respondents' motion for sanctions and request for a finding of contempt based on Hasian's failure to comply with an order compelling her to produce her phone for forensic analysis. The probate court granted this motion for sanctions and later denied Hasian's own motion for partial summary judgment.

The probate court made the following pertinent findings of fact and conclusions of law after the two-day trial on the merits: Decedent died intestate, survived by Hasian and Respondents as his heirs; a neutral third party would be appointed as personal representative; even if the tort of intentional interference with inheritance is viable in South Carolina, Respondents failed to prove the necessary elements; although Hasian engaged in a fraudulent act by attempting to probate the 2021 Will, Respondents did not clearly and convincingly show that Spera and Bell "knew it was a forgery and conspired with [Hasian] to defraud" them; and Hasian converted Estate funds in the amount of $7,147.32 to her own use. In addition to ordering Hasian to pay damages in the amount of $7,174.32, the probate court awarded Respondents attorney's fees and costs in the amount of $56,516.80. *See* S.C. Code Ann. § 62-1-111 (2024) (providing that in a formal probate proceeding, "the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the estate that is the subject of the controversy").

After the probate court denied Hasian's motion to alter or amend, she appealed to the circuit court, which affirmed the probate court's orders. The circuit court denied Hasian's subsequent Rule 59(e), SCRCP, motion, and she timely appealed.

**Standard of Review**

"In a probate appeal, the circuit court, court of appeals, or supreme court shall hear and determine the appeal according to the rules of law." *Wellin v. Wellin*, 427 S.C.

15, 22, 828 S.E.2d 767, 770 (Ct. App. 2019). "[I]f the action is at law, the circuit court should uphold the findings of the probate court if there is any evidence to support them; if the action is equitable, the circuit court may make findings in accordance with its own view of the preponderance of the evidence." *Id.* at 22, 828 S.E.2d at 770–71 (quoting *In re Estate of Weeks*, 329 S.C. 251, 260, 495 S.E.2d 454, 459 (Ct. App. 1997)). "An action for conversion is an action at law." *Moore v. Benson*, 390 S.C. 153, 162, 700 S.E.2d 273, 278 (Ct. App. 2010).

"Decisions as to the amount of attorneys' fees should ordinarily be made by trial courts. When a trial court's decision is made on a sound evidentiary basis and is adequately explained with specific findings—as the law requires—we defer to the trial court's discretion." *Horton v. Jasper Cnty. Sch. Dist.*, 423 S.C. 325, 331, 815 S.E.2d 442, 445 (2018). "The decision to award or deny attorneys' fees under a state statute will not be disturbed on appeal absent an abuse of discretion." *S.C. Dep't of Transp. v. Revels*, 411 S.C. 1, 8, 766 S.E.2d 700, 703 (2014) (quoting *Kiriakides v. Sch. Dist. of Greenville Cnty.*, 382 S.C. 8, 20, 675 S.E.2d 439, 445 (2009)). "Similarly, the specific amount of attorneys' fees awarded pursuant to a statute authorizing reasonable attorneys' fees is left to the discretion of the trial judge and will not be disturbed absent an abuse of discretion." *Id.* at 8, 766 S.E.2d at 703–04 (quoting *Kiriakides*, 382 S.C. at 20, 675 S.E.2d at 445). "However, where the issue of the amount of attorneys' fees awarded depends on the Court's interpretation of 'reasonable' attorneys' fees" authorized by statute, "the interpretation of the statute is a question of law that the Court reviews de novo." *Id.* at 8, 766 S.E.2d at 704.

**Analysis**

### I.   Attorney's Fees

Hasian does not challenge the statutory basis for the fee award, and all parties agree that *Glasscock v. Glasscock*, provides the factors applicable to the fee analysis. 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). Hasian's quarrel is with the probate court's application of the *Glasscock* factors—she further contends the fee award "is grossly disproportionate and unsubstantiated" and thus violative of the court's statutory authority to award reasonable fees and costs "as justice and equity may require." *See* S.C. Code § 62-1-111 (2024). We disagree.

In *Glasscock*, our supreme court clarified the six factors to be considered in determining a reasonable attorney's fee: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of

counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services." 304 S.C. at 161, 403 S.E.2d at 315.

Here, the probate court provided a detailed, thorough analysis addressing each of the *Glasscock* factors:

> a. The nature, extent, and difficulty of legal services Respondents' counsel provided were laborious and time consuming, requiring expert witness preparation, coordination with forensic analysts, extensive document review, prosecution of multiple motions, and a tedious discovery process made more difficult by [Hasian]'s refusal to actively participate, including [Hasian]'s failure to comply with the Court's Order granting the Respondents' Motion to Compel, which necessitated a Motion and Order for Contempt.
>
> b. Respondents' counsel and staff devoted a substantial amount of time performing work in this matter, totaling 216 hours. [Hasian] argues that after the Court issued the Order for Summary Judgment that Decedent's 2021 Will was invalid, she should not be responsible for Respondents' attorney fees going forward. The Court disagrees. The issues presented to the Court were not resolved by the entry of the Order for Partial Summary Judgment in April 2022. The Order was for a *partial* Summary Judgment and the Court concluded only that the 2021 Will was improperly executed. At that time, the Court did not conclude that [Hasian] had knowingly submitted a fraudulent document with reckless disregard for the rights of others. That evidence was not fully developed until the trial. The Court, after assessing the credibility of her testimony at [trial], determined [Hasian] knew the 2021 Will was improperly executed and knew the Decedent did not sign it. After the trial ended, the evidence of [Hasian]'s intent was taken into consideration when the Court allocated fees.
>
> Respondents' other causes of action were a direct result of [Hasian]'s decision to submit the 2021 Will for

probate. At the time of the partial summary judgment hearing, the Court held a determination of attorneys' fees in abeyance.

c. The professional standing of Respondents' counsel supports his fees. Respondents' counsel graduated in the top fifteen percent of his law school class, was admitted to the Order of the Wig and Robe, clerked for the Honorable John C. Hayes, III, in the York County Circuit Court, and has held every office in the York County Bar Association's executive board. He [had] been a practicing attorney for five years at the time of trial, licensed in two states, and is the recipient of multiple awards from national legal peer-review organizations. Counsel routinely practices in the York County Probate Court and exhibits a high degree of competence and professionalism.

d. Attorney's fees in this matter were based solely on the time devoted to this case and no contingency agreement was in place between Respondents and their counsel. Respondents' counsel and staff spent 216 hours on this case.

e. Respondents' counsel's rate of $250.00 per hour is reasonable for a York County, South Carolina attorney with similar experience and professional standing practicing in the York County Probate Court.

f. Respondents received beneficial results based on Respondents' counsel's representation. Respondents would not have been entitled to any portion of [the Estate] without invalidating [the 2021 Will]. Respondents[ ] were entitled to try to prove the allegations of their case, including that the 1997 Will should be probated as an original. Although the Court disagreed with their arguments, they had the right to make them. [Hasian] has been removed as personal representative of [the Estate], and Respondents established [Hasian] perpetrated fraud on the Court and

the Respondents by knowingly submitting an invalid will for probate.

g. [Hasian] also argued the three Respondents were in a better position to pay their fees than she, but based on Respondents' counsel's arguments at the September 28th hearing, which were not disputed, [Hasian] is in a financial condition which allows her to pay the attorney fees and she has the ability to pay them.

Hasian's appellate argument focuses on whether there is sufficient evidence in the record to support two of the *Glasscock* factors addressed by the probate court: (1) the time necessarily devoted to the case and (2) the beneficial results obtained.

Respondents argue their counsel and his staff spent "over 216 hours working on this matter," and we agree with the probate court that Hasian's own actions necessitated most (if not all) of this time. This work included hiring and preparing an expert handwriting witness for trial; taking depositions; hiring forensic analysts to examine Hasian's cell phone; issuing subpoenas; reviewing bank records, phone records, and other documents; motions for partial summary judgment and discovery motions—specifically, motions to compel, for sanctions, and for a finding of contempt; and preparing for and trying the two-day case.

As to the time expended, Hasian argues the fee award should not include trial preparation work or fees and expenses incurred at trial because the probate court deemed the 2021 Will invalid in its grant of partial summary judgment. But the probate court specifically reserved ruling on the willfulness of Hasian's behavior until after it heard the evidence at trial, and the partial summary judgment order did not fully resolve the issues in this litigation which Hasian instigated by attempting to probate the false 2021 Will. Simply put, Respondents had no obligation to cease working to prove their case after this partial victory.[4]

---

[4] We recognize that the relationship between Hasian and at least two of Decedent's daughters was problematic even before Decedent's death; indeed, the status of Hasian's own relationship with Decedent further complicated these proceedings. For example, Respondents' trial exhibits included screenshots of text messages from Decedent indicating he left Hasian several months before his death and intended to divorce her.

Regarding the beneficial results obtained, Hasian correctly notes Respondents did not prevail on their own petition for appointment or their claims for intentional interference with inheritance, civil conspiracy, and punitive damages. But they still won the case—the probate court granted Respondents' motion for partial summary judgment as to the invalidity of the 2021 Will, found Hasian converted Estate assets, and awarded attorney's fees as authorized by statute. The record here more than supports that Hasian converted Estate assets and engaged in a fraudulent scheme to probate the 2021 Will. We see no error of law, and with one caveat, we agree with the circuit court that the probate court's findings are supported by the evidence.

Respondents' fee petition requested $53,116.80 in attorney's fees and costs. Yet, the probate court awarded Respondents $56,516.80. We are unable to find support in the record for the $3,400 difference between the fee request and the fee award.[5] Accordingly, we modify the award of attorney's fees and costs to the $53,116.80 figure reflected in Respondents' fee petition.

## II.   Conversion

Hasian further argues the probate court erred in finding she converted Estate assets when she wrote herself checks from Decedent's business account. We disagree.

"'Conversion' is defined as the unauthorized assumption and exercise of the rights of ownership over goods or personal chattels belonging to another, to the alteration of their condition or to the exclusion of the rights of the owner." *Mullis v. Trident Emergency Physicians*, 351 S.C. 503, 506–07, 570 S.E.2d 549, 550 (Ct. App. 2002); *see also Owens v. Andrews Bank & Trust Co.*, 265 S.C. 490, 496, 220 S.E.2d 116, 119 (1975) (finding conversion may arise by the illegal detention of another's property). Money "may be the subject of conversion if 'it is capable of being identified and there may be conversion of determinate sums even though the specific coins and bills are not identified.'" *Id.* at 507, 570 S.E.2d at 551 (quoting *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 498, 392 S.E.2d 789, 792 (1990)).

---

[5] This difference may be due to the in camera nature of the probate court's review of the parties' fee petitions. The court referenced this in camera review in its initial order awarding Respondents' attorney's fees and costs. In its subsequent order addressing Hasian's motion to alter or amend, the probate court amended the fee analysis to provide additional detail regarding its *Glasscock* analysis.

Hasian explained that she began doing payroll in 2019 and wrote her own paychecks "when [they] had the money." Although Hasian suggested she had been an authorized signatory on the business account since 2017, she was unable to produce documentation indicating such. She further admitted that she wrote eight checks from the business account to herself and backdated them to the day before Decedent's death.[6]

This evidence more than supports the probate court's determination that Hasian converted Estate funds from Decedent's business account.

**Conclusion**

The orders of the circuit court and probate court are

**AFFIRMED AS MODIFIED.**

**HEWITT and TURNER, JJ., concur.**

---

[6] Hasian was also unable to explain a withdrawal from the business account.